UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| JOHN P. ZELLNER,<br><br>                       Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, [1] Commissioner of<br> Social Security,<br><br>                       Defendant. | **REPORT**<br>**and**<br>**RECOMMENDATION**<br><br>**13-CV-0432A(F)** |

---

APPEARANCES:   LAW OFFICES OF PUSATIER, SHERMAN, ABBOTT &
               SUGARMAN, LLP
               Attorneys for Plaintiff
               RICHARD G. ABBOTT, of Counsel
               2464 Elmwood Avenue
               Kenmore, New York 14217

               WILLIAM J. HOCHUL, JR.
               UNITED STATES ATTORNEY
               Attorney for Defendant
               MARY C. KANE
               Assistant United States Attorney, of Counsel
               Federal Centre
               138 Delaware Avenue
               Buffalo, New York 14202, and

               STEPHEN P. CONTE
               Regional Chief Counsel - Region II
               ANDREEA L. LECHLEITNER
               Assistant Regional Counsel
               United States Social Security Administration
               Office of the General Counsel, of Counsel
               26 Federal Plaza
               Room 3904
               New York, New York 10278

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on October 29, 2014.[1] (Doc. No. 7). The matter is presently before the court on motions for judgment on the pleadings, filed on November 13, 2013, by Plaintiff (Doc. No. 9), and on November 15, 2013, by Defendant (Doc. No. 10).

## BACKGROUND

Plaintiff John P. Zellner ("Plaintiff" or "Zellner"), seeks review of Defendant's decision denying him Disability Insurance Benefits ("DIB") ("disability benefits") under, Title II of the Social Security Act ("the Act"). In denying Plaintiff's application for disability benefits, Defendant determined that Plaintiff had severe impairments of the neck, thoracic, and lumbar spine, and left shoulder pain (R. 15), but does not have an impairment or combination of impairments within the Act's definition of impairment. (R. 15).[2] Defendant further determined that Plaintiff had the residual functional capacity to perform less than a full range of light work with the limitations of ability to perform frequent postural activities, but no climbing ladders, ropes or scaffolding, occasional flexion, extension, and rotation of the neck, occasional pushing and pulling with the upper extremities bilaterally, no overhead reaching with the left upper extremity, occasional reaching up to shoulder level with the upper left extremity, and occasional reaching in all directions with the right upper extremity. (R. 15). As such, Plaintiff was

---

[1] Hon. Richard J. Arcara reassigned the case to Hon. Lawrence J. Vilardo on November 23, 2015.
[2] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

2

found not disabled, as defined in the Act, at any time from the alleged onset date through the date of the Administrative Law Judge's decision on February 16, 2012.

## PROCEDURAL HISTORY

Plaintiff filed his application for disability benefits on August 19, 2010 (R. 100), alleging disability based on spinal arthritis, thoracic and lumbar disc damage, syrinx, [2] pain, and a left shoulder impairment. (R. 131). Plaintiff's application was initially denied by Defendant on December 16, 2010, and, pursuant to Plaintiff's request filed January 13, 2011 (R. 88), a hearing was held before Administrative Law Judge David S. Lewandowski ("Lewandowski" or "the ALJ"), on January 31, 2012, in Buffalo, New York. (R. 23-45). Plaintiff, represented by Stephen F. Pusatier, Esq. ("Pusatier"), appeared and testified at the hearing. (R. 25-41 ). Vocational Expert Jay Steinbrenner ("Steinbrenner" or "the VE") also testified at the hearing. (R. 41-45). The ALJ's decision denying the claim was rendered on February 16, 2012. (R. 13-18).

Plaintiff requested review by the Appeals Council, and the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on April 3, 2013. (R. 1-7).

This action followed on April 29, 2013, with Plaintiff alleging that the ALJ erred by failing to find him disabled. (Doc. No. 1). Contemporaneous with the filing of the action in this case, on June 5, 2013, Plaintiff submitted a new application for Title II disability benefits with a disability onset date of March 6, 2012. (Doc. 15). Relative to that application, Plaintiff, represented by Richard Abbott, Esq. ("Abbott"), appeared and

---

[2] A syrnix is a fluid-filled cyst within a person's spinal cord.

testified at a hearing on May 12, 2015, where upon review on July 8, 2015, Administrative Law Judge Stanley A. Moskal, Jr. ("Moskal" or "the ALJ"), issued a decision favorable to Plaintiff's application that awarded Plaintiff disability benefits for the period commencing on March 6, 2012, and continuing until after the date of the ALJ's disability determination on July 8, 2015.  (Doc. 15-1).  On November 24, 2015, Plaintiff submitted the Affidavit of Richard G. Abbott ("Abbott Declaration"), amending Plaintiff's period of disability review to the closed period between July 19, 2010 and March 6, 2012.  (Doc. 15).

Defendant's answer, filed on August 12, 2013 (Doc. No. 6), was accompanied by the record of the administrative proceedings.  On November 14, 2013, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Doc. No. 9) ("Plaintiff's Memorandum").  Defendant filed, on November 15, 2013, Defendant's cross motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 10) ("Defendant's Memorandum").  On December 16, 2013, Defendant filed Defendant's Reply Memorandum of Law (Doc. No. 12) ("Defendant's Reply").  Oral argument was deemed unnecessary.  Based on the following, Plaintiff's motion should be GRANTED.

## **FACTS**[3]

Plaintiff, John P. Zellner, ("Zellner" or "Plaintiff"), was born on January 12, 1954, lives alone, and worked most recently as a water purification sales representative from 2002 until 2010 (R. 122), when Plaintiff was fired for reasons not related to Plaintiff's

---
[3] Taken from the pleadings and the administrative record.

impairments on January 2, 2010.  (R. 30, 131).  Plaintiff alleges that he is not able to work because he suffers syrinx, spinal arthritis, thoracic and lumbar damage, and debilitating pain.  (R. 131).

Relative to the closed period of disability under review in this case, on March 12, 2010, Jasbeer Makhija, M.D. ("Dr. Makhija"), evaluated an X-ray of Plaintiff's thoracic and lumbar spine that showed hypertrophic changes to Plaintiff's lumbar and thoracic spine, and evidence of earlier compression of Plaintiff's T-11,[4] T-12, and L-1[5] disc segments, with no significant disc space narrowing, spondylosis (spinal degeneration) or spondylolisthesis (forward displacement of a lumbar vertebra).  (R. 169).

On June 8, 2010, Plaintiff underwent a cervical spine X-ray that Charles J. Lesh, M.D. ("Dr. Lesh"), opined showed degenerative disc disease at Plaintiff's C5-6[6] and C6-7 disc segments.  (R. 172).

On June 3, 2010, Young J. Yu, M.D. ("Dr. Yu"), a neurological surgeon, completed a consultative physical examination on Plaintiff, and opined that Plaintiff had mild curvature and scoliosis of the thoracic spine, and deferred definitive diagnosis until reviewing Plaintiff's March 12, 2010, thoracic X-ray.  (R. 183).

On June 24, 2010, Dr. Yu reviewed the findings of a magnetic imaging scan ("MRI") of Plaintiff's thoracic spine, opined that the scan showed no evidence of thoracic spinal compression, and recommended Plaintiff undergo a cervical MRI to rule out possible disc herniation of Plaintiff's C5-C6 disc segment.  (R. 181).

---

[4] The thoracic vertebrae are located in the area of an individual's upper and middle back, and are comprised of 12 disc segments numbered T-1 through T-12.
[5] The lumbar spine is located in the area of an individual's lower back, and is comprised of five disc segments numbered L1 through L5, the sacrum bone, and coccyz (tailbone).
[6] The cervical spine consists of the spinal area from the base of an individual's skull to the thoracic vertebrae, and is comprised of seven vertebrae that are numbered C1-C7.

On June 28, 2010, Timothy Dyster, M.D. ("Dr. Dyster"), a radiologist with Niagara Frontier Radiologic Associates in Niagara Falls, New York, evaluated an MRI of Plaintiff's cervical spine, and assessed Plaintiff with posterior spurring and diffuse disc bulge at Plaintiff's C5-C6 disc segment, diffuse disc bulge at Plaintiff's C4-C5 and C6-C7 disc segments, a C3-C4 midline disc herniation, and loss of height at Plaintiff's C5 and C6 vertebrae without abnormal marrow signaling, that suggested possible congenital chronic change decreased lordosis (swayback) consistent with Plaintiff's muscle spasms, and no evidence of syrinx within the cervical region of Plaintiff's spine. (R. 178).

On July 15, 2010, Dr. Yu reviewed the findings of Plaintiff's June 28, 2010 cervical MRI, and recommended anterior discectomy and interbody fusion surgery of Plaintiff's C5-C6 disc segments as a last resort.  Dr. Yu noted that Plaintiff's June 28, 2010 MRI revealed rather significant degenerative disc disease, osteophytic spurs at Plaintiff's C5-C6 disc segments that impinged on Plaintiff's spinal cord, and significantly compromised Plaintiff's intervertebral foramina (space between two spinal discs) bilaterally.  (R. 180).

On July 19, 2010, Matthew Bennett, M.D. ("Dr. Bennett"), Plaintiff's primary physician, completed a follow-up examination on Plaintiff who reported back spasms, gripping, squeezing and stiffness, and pain radiating to Plaintiff's shoulder, that caused difficulty with Plaintiff's ability to ambulate effectively.  (R. 188).  Dr. Bennett noted that although Plaintiff's severe disc herniation would normally require surgery, the location of the spinal fluid leakage made spinal surgery too dangerous an option.  *Id*.  Upon examination, Dr. Bennett assessed Plaintiff's thoracic spine with

5

> [n]o scoliosis, asymmetry or abnormal curvature noted on inspection of the thoracic spine. Range of motion is restricted with flexion 0. limited to 10 degrees, extension 0. limited to 5 degrees, right lateral bending 0. limited to 5 degrees, lateral rotation to the left 0. limited to 5 degrees, lateral rotation to the left 0, limited to 5 degrees and lateral rotation to the right 0. limited to 5 degrees. Neck movements are painful with flexion 0. beyond 45 degrees, extension 0. beyond 5 degrees, right lateral bending 0. beyond 5 degrees, left lateral bending 0. beyond 5 degrees, lateral rotation to the left 0. beyond 5 degrees and lateral rotation to the right 0. beyond 5 degrees. On examination of paravertebral muscles, hypertonicity, spasm, tenderness and right muscle band is noted on both [ ] sides.

(R. 189).

Dr. Bennett noted that Plaintiff was depressed and frustrated, impaired in his ability to complete activities of daily living, and unable to work, and diagnosed Plaintiff with Vitamin D deficiency not otherwise specified ("NOS"), hypertension NOS, Anxiety State NOS, Depressive disorder not elsewhere classified ("NOC"), and lumbago (pain in the muscles and joints of the lower back).  (R. 190).

On November 1, 2010, Dr. Bennett completed a physical examination on Plaintiff who reported back pain in his cervical, thoracic and lumbar regions.  (R. 185).  Dr. Bennett noted that Plaintiff was taking cariosoprodol (muscle relaxant), and Oxycodone (pain), and that Plaintiff reported being depressed and frustrated, and unable to complete activities of daily living and attend work as a result of his back pain.  Upon examination, Dr. Bennett measured Plaintiff's thoracic spine with 10 degrees upon extension, with all other abilities for flexion and extension measured at 5 degrees.  (R. 186).

Plaintiff received monthly chiropractic treatment form Juliet Crossland-Sorensen, D. C. ("Dr. Crossland-Sorensen"), from April 23, 2008 until November 18, 2011.  (R. 225-33).

6

On May 25, 2012, Gurmeet Dhillon, M.D. ("Dr. Dhillon"), reviewed an MRI of Plaintiff's cervical spine taken the same day, and evaluated Plaintiff with a central C5-C6 disc herniation impinging on the anterior aspect of Plaintiff's spinal cord, central C4-C5 disc herniation indenting the anterior aspect of Plaintiff's thecal sac, central C6-C7 disc herniation indenting the anterior aspect of Plaintiff's thecal sac, central C3-C4 disc herniation indenting the anterior aspect of Plaintiff's thecal sac, uncovertebral osteophytes producing moderate bilateral foraminal stenosis at Plaintiff's C5-C6 disc segment, a normal cervical cord with no intramedullary lesion or evidence of syringohydromyella (spinal cord cysts), and normal craniocervical junction with no evidence of caudal descent of Plaintiff's tonsils.  (R. 235).  Upon reviewing an MRI scan of Plaintiff's thoracic spine taken the same day, Dr. Dhillion opined the MRI revealed a sryingohydromyelic cavity involving Plaintiff's thoracic cord that extended from Plaintiff's T-3 to T-9 disc segments with a maximum diameter of 1.5mm, mild chronic anterior wedge compression fractures of Plaintiff's T-10, T-11, and T-12 disc segments with no acute fractures or dislocation, right-sided T-8-T-9 disc herniation impinging on the anterior aspect of Plaintiff's spinal cord, and degenerative disc disease involving Plaintiff's thoracic spine with no thoracic spinal stenosis or cord compression.  (R. 236).

As Plaintiff, by separate application, was deemed disabled on March 12, 2012, only evidence for the period between July 19, 2010 and March 6, 2012, will be considered relevant to the review in this case.  *See* 20 C.F.R. § 404.1594.

**DISCUSSION**

1.  **Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social Security Act if the individual is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . .. An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves he or she is severely impaired and unable to perform any past relevant work, the burden shifts to the Commissioner to prove there is alternative employment in the national economy suitable to the claimant. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

A.  **Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3). "Congress has instructed . . . that the factual findings of the Secretary,[1] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[2] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

    However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also*

---

[2] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

*Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work").  If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment.  *Berry,* 675 F2d at 467.  In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision.  *Richardson*, 402 U.S. at 410.

**B.    Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity.  "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit.  20 C.F.R. § 404.1510(a)(b).  Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed.  20 C.F.R. § 404.1572(a).  Earnings may also determine engagement in substantial gainful activity.  20 C.F.R. § 404.1574.  In the instant case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 19, 2010, the date of Plaintiff's alleged onset of disability.  (R. 15).  Plaintiff does not contest this determination.

**C.    Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether Plaintiff had a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 and significantly limits the Plaintiff's ability to do

"basic work activities."  The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) ("§ 1521"), 416.921(b).

In this case, the ALJ determined that Plaintiff has the severe impairments of neck, thoracic, and lumbar back impairments, and left shoulder pain as defined under 20 C.F.R. § 404.1520(c), but that none of Plaintiff's severe impairments, either alone or in combination met or equaled a listed impairment.  (R. 15).  Plaintiff does not contest the ALJ's step two disability finding, but contests the ALJ's further finding that Plaintiff's back impairments do not meet the criteria for disability under 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 § 1.04 ("§ 1.04") (Disorders of the spine), as the ALJ failed to assign proper weight to the opinion of Dr. Bennett, Plaintiff's treating physician.  Plaintiff's Memorandum at 7-8.  Plaintiff further contests the ALJ's credibility assessment of Plaintiff, Plaintiff's Memorandum at 10-11, and the ALJ's finding that Plaintiff is able to perform Plaintiff's past relevant work, the ALJ's determination that Plaintiff is not disabled as a result of Plaintiff's age, education, and work experience, Plaintiff's Memorandum at 8-10, and the Appeal's Council's rejection of Dr. Crossland-Sorensen's medical source statement dated April 10, 2012.[7]  Plaintiff's Memorandum at 11-13

---

[7] The issue of Dr. Crossland-Sorensen's medical source statement is not relative to review in this case, as it does not fall within the closed period of disability review.

**D.** <u>**Listing of Impairments, Appendix 1**</u>

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments"). If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled. 20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled"). The relevant listings of impairments in this case include 20 C.F.R. Pt. 404, Subt. P, Appendix 1, § 1.04 ("§ 1.04") (Disorders of the spine).

**Disorders of the spine**

In the instant case, the ALJ determined that Plaintiff did not meet the criteria for disability under any listed impairments. (R. 15). Plaintiff contends that substantial evidence supports that Plaintiff meets the criteria for disability under 20 C.F.R. Pt. 404, Subpt. P. App. 1 § 1.04A ("§ 1.04A") (Disorders of the spine), and that the ALJ violated the treating physician rule in assigning improper weight to the opinion of Dr. Bennett, Plaintiff's treating physician. Plaintiff's Memorandum at 7. Although the ALJ provides no indication as to which listed impairment the ALJ considered in determining whether Plaintiff was disabled under step three of the disability analysis, the criteria necessary to establish disability under § 1.04A of the listed impairments will be used for purposes of review here.

In order to be found disabled under § 1.04A, a disability claimant must provide evidence of a disorder of the spine (*i.e.,* herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis vertebral fracture), that results in compromise of a nerve root (including the cauda equina) or the spinal cord, with

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Pt. 404, Subpt. P. App. 1 § 1.04A ("§ 1.04A").

**§ 1.04A**

As indicated in the foregoing, Discussion, *supra*, at 14, disability under § 1.04A requires that a disability claimant provide evidence that supports nerve root compression, pain, limitation of motion of the spine, motor loss in the form of atrophy or weakness, sensory or reflex loss, and evidence of positive leg raising test results in instances where the lumbar spine is involved. *See* 20 C.F. R Part 404, Subpt. P App. 1 § 1.04A. Contrary to the ALJ's determination otherwise, substantial evidence supports that Plaintiff meets the criteria for disability under § 1.04, such that Plaintiff is disabled.

In particular, on June 28, 2010, Dr. Yu reviewed the findings of an MRI scan completed the same day that showed Plaintiff with indentation of Plaintiff's thecal sac at Plaintiff's C3-C4, C5-C6, and C6-C7 disc segments, to support that Plaintiff's cervical spine impairment resulted in nerve root compression as required to be considered disabled under § 1.04. (R. 178). Plaintiff's consistent reports of back pain during medical evaluations with Dr. Bennett (R. 211, 204 200, 195, 188, 185), and consultative

14

surgical appointments with Dr. Yu (R. 183, 239), supports that Plaintiff's back impairment resulted in neuro-anatomic distribution of pain to meet the criteria for disability under § 1.04A. Dr. Bennett evaluated Plaintiff with limitation of motion resulting from Plaintiff's spinal impairment on March 2, 2010 (R. 211), April 2, 2010 (R. 204), May 3, 2010 (R. 200), June 4, 2010 (R. 196), July 19, 2010 (R. 189), and November 1, 2010 (R. 186), and Dr. Crossland-Sorensen evaluated Plaintiff with muscle weakness on December 1, 2010 (R. 229), March 17, 2011 (R. 227), March 24, 2011 (R. 227), and April 4, 2011(R. 227), and sensory loss on October 21, 2010 (R. 230), and December 21, 2010. (R. 229). Dr. Bennett evaluated Plaintiff with hyposthesia (sensory loss) on July 19, 2010 (R. 189), and November 1, 2010. (R. 186).

As such, substantial evidence in the record supports that Plaintiff's thoracic and cervical spine impairments met the criteria for disability under § 1.04A of the listed impairments such that Plaintiff should be considered disabled for the closed period of disability between July 19, 2010 and March 6, 2012. Remand for calculation of benefits is therefore appropriate for the closed period of disability between July 19, 2010 and March 6, 2012, the date on which Plaintiff was deemed disabled by Plaintiff's second disability application filed contemporaneously with this action.

Although not essential to this determination as Plaintiff meets the criteria for disability under step three of the disability review process, in the interest of completeness, the undersigned proceeds to address Plaintiff's contention, Plaintiff's Memorandum at 7-8, that the ALJ violated the treating physician rule in not affording the proper weight to the opinion of Plaintiff's primary physician Dr. Bennett.

As indicated in the foregoing, Discussion, *supra*, at 15, as Plaintiff's primary physician, Dr. Bennett completed physical examinations on Plaintiff six times between June 4, 2010 and April 4, 2011, and assessed Plaintiff with limited range of motion, sensory loss, back pain, muscle pain, and stiffness on each occasion, assessments that are supported by Plaintiff's X-ray and MRI results.  (R. 169, 179, 183).  Dr. Bennett's examining relationship, length of treatment, nature and extent of treatment provided to Plaintiff, and Dr. Bennett's opinions which are supported and consistent with the record as a whole, establish Dr. Bennett as Plaintiff's treating physician.  *See* 20 C.F.R. § 404.1527.  The ALJ's failure in this case to include consideration of Dr. Bennett's several evaluations of Plaintiff, or afford proper weight to Dr. Bennett's opinion as Plaintiff's treating physician, is a violation of the treating physician rule.  *See Doria v. Colvin*, 2014 WL 3109184, at *3 (W.D.N.Y. July 3, 2014) (ALJ must give controlling weight to a treating physician's opinion when that opinion is well-supported by medically acceptable clinical and laboratory techniques and is consistent with other substantial evidence in the record).  Remand for violation of the treating physician rule is not necessary here, however, as Dr. Bennett's evaluations of Plaintiff, paired with the other evidence in the record, provides substantial evidence that Plaintiff meets the criteria for disability under § 1.04A, and is thus disabled.

As remand for calculation of benefits necessarily forecloses any need to review Plaintiff's allegations under the remaining steps of the disability review process, the undersigned does not proceed to review those issues.

Consistent with the foregoing, Plaintiff's motion should be GRANTED, Defendant's motion should be DENIED.

## **CONCLUSION**

Based on the foregoing, Defendant's motion (Doc. No. 10) should be DENIED, Plaintiff's motion (Doc. No. 9) should be GRANTED; and the matter should be REMANDED for calculation of benefits.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   March 22, 2016
    Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:    March 22, 2016
               Buffalo, New York

18